Filed 3/12/25  P. v. Warren CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANDRE LA JUAN WARREN,<br><br>    Defendant and Appellant. | B334985<br><br>(Los Angeles County<br>Super. Ct. No. KA015595) |

APPEAL from an order of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.

_____

In 1993 Andre La Juan Warren and codefendants Keith Eugene Barton and Bobby Maurice Tillman were convicted of attempted murder and conspiracy to commit murder.  Warren was also convicted of assault against a peace officer, and the jury found true multiple firearm allegations, including that Warren personally used a firearm during the commission of the offenses.  We affirmed the judgments.  (*People v. Barton* (1995) 37 Cal.App.4th 709.)

In 2022 Warren filed a petition for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1]  After appointing counsel for Warren, the superior court denied the petition, finding Warren failed to make a prima facie showing he was entitled to relief.  Warren contends on appeal that his conviction for conspiracy to commit murder did not make him ineligible for resentencing relief as a matter of law.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.  *The Evidence at Trial and Warren's Convictions*[2]

On December 3, 1992 Pomona Police Officer Roger Iwig, while in full uniform and driving a marked police car, conducted a traffic stop of a minivan after observing the minivan fail to stop at a stop sign.  The minivan did not pull over immediately and instead moved to the curb lane and proceeded through another intersection.  Officer Iwig could see three men in the minivan.  Barton was the driver; Tillman was in the front passenger seat;

---

[1]  Further statutory references are to the Penal Code.

[2]  We provide a summary of the facts as set forth in *People v. Barton, supra*, 37 Cal.App.4th 709 for background only.

and Warren was in a rear seat. At this point a second patrol car was behind Officer Iwig's patrol car.

As the minivan slowed down and started to pull over, the minivan's right-side doors opened. Tillman and Warren jumped out of the vehicle and began shooting at Officer Iwig. Officer Iwig ducked down and was able to turn his patrol car around and retreat to safety. Officer Iwig was unharmed, but seven bullets struck the patrol car. The officer in the second patrol car fired his weapon at Warren and Tillman, who ran away. Barton drove the minivan away and crashed into a curb. Barton and a fourth man jumped out of the minivan and fled. All four men were located and arrested later that evening.

The jury found Warren, Barton, and Tillman guilty of attempted murder (§§ 187, 664) and conspiracy to commit murder (§§ 182, 187). Warren was also convicted of assault against a peace officer (§ 245, subd. (d)(1)). The jury found true with respect to the conspiracy and attempted murder convictions that a principal was armed with a firearm (§ 12022, subd. (a)(1)), a principal was armed with an assault weapon (*id*., subd. (a)(2)), and Warren personally used a firearm (§ 12022.5, subds. (a) & (d)). Warren also admitted he had suffered prior felony convictions and at the time of the offenses was on bail (§ 12022.1). The trial court sentenced Warren to an indeterminate state prison term of 25 years to life on the conspiracy conviction, plus seven years for the enhancements; the court stayed the sentences for attempted murder and assault.

B.      *Warren's Petition for Resentencing*

On November 14, 2022 Warren filed a form petition for resentencing seeking to vacate his murder conviction on the basis that he could not presently be convicted of attempted murder

3

under the changes made to sections 188 and 189, effective January 1, 2019.  The superior court appointed counsel for Warren, and the People filed an opposition.  In their opposition the People recounted the testimony from Warren's trial and concluded, based on "the strength of the evidence" against Warren, that Warren "remains guilty of attempted murder as a perpetrator, *beyond a reasonable doubt*" rather than pursuant to any imputed malice theory.  (Capitalization omitted.)  In Warren's reply brief he argued the People's opposition requested the court weigh the evidence and make credibility determinations, which are inappropriate at the prima facie review stage.

On October 26, 2023 the superior court summarily denied Warren's petition for resentencing without issuing an order to show cause.  The court explained Warren was not entitled to relief as a matter of law because he had been convicted of conspiracy to commit murder and the jury was instructed that one of the overt acts alleged by the prosecution to support the conspiracy charge was that Warren had fired a firearm during the commission of the conspiracy.  Further, the jury found true that Warren personally used a firearm during the course of the conspiracy.[3]  Warren timely appealed.

---

[3]     The superior court also stated the jury was not instructed on a theory of natural and probable consequences or felony murder.  As we discuss below, however, the record reflects that the jury was instructed on the natural and probable consequences theory of aiding and abetting on the attempted murder charge.

4

# DISCUSSION

A.    *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848; see *People v. Reyes* (2023) 14 Cal.5th 981, 984.) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.) Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)). (See *Strong*, at p. 708.) Senate Bill No. 775 (2021-2022 Reg. Sess.), effective January 1, 2022, expanded the scope of potential relief by applying Senate Bill 1437's ameliorative changes to individuals

5

convicted of attempted murder and voluntary manslaughter. (See § 1172.6, subd. (a).)

Senate Bill 1437 also provided a procedure in former section 1170.95, now codified in section 1172.6, for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189. (*People v. Lewis, supra*, 11 Cal.5th at p. 959; *People v. Gentile*, supra, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court must appoint counsel to represent the petitioner upon a request pursuant to section 1172.6, subdivision (b)(3). Further, upon the filing of a facially sufficient petition, the court must determine whether the petitioner has made a prima facie showing of entitlement to relief. (See § 1172.6, subd. (c).) Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts. (*Id.,* subds. (c) & (d)(1).)

We review de novo whether the superior court properly denied the petition at the prima facie review stage under section 1172.6, subdivision (c). (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251; *People v. Lopez* (2022) 78 Cal.App.5th 1, 14 [denial at

6

the prima facie review stage "'"is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law,'"' which "'"is a purely legal conclusion . . . we review de novo"'"'"].

B.    *Warren Is Ineligible for Resentencing as a Matter of Law*

On appeal Warren contends that to the extent the trial court relied on the jury instructions to find he was ineligible for relief under section 1172.6, the court erred because the People did not submit the jury instructions to the trial court and the instructions are not part of the record on appeal. Warren is mistaken. The People's opposition to Warren's petition for resentencing (in footnote 2) stated the reporter's and clerk's transcripts from Warren's prior appeal were lodged with the superior court electronically. After Warren's opening brief was filed on appeal, we granted the Attorney General's unopposed request to take judicial notice of excerpts of the reporter's transcripts from Warren's trial, including the People's closing argument, the jury instructions, and the trial court's answer to a jury question, which were attached to the request for judicial notice. Warren did not file a reply brief on appeal, and he waived oral argument. Accordingly, Warren has not responded to the People's argument that the jury instructions in this case are dispositive.[4]

---

[4]    We agree with Warren's assertion that in opposing his petition in the superior court, the People erroneously urged the court to make a factual finding Warren possessed an intent to kill. (See *People v. Campbell* (2023) 98 Cal.App.5th 350, 361 ["at the prima facie stage, trial courts should not reject petitioners' allegations on credibility grounds or engage in weighing of evidence or factfinding"]; *People v. Clements* (2022)

7

The jury instructions in this case conclusively establish Warren is ineligible for resentencing. The trial court instructed the jury on conspiracy with a modified version of CALJIC No. 6.10, which stated in part: "A conspiracy is an agreement entered into between two or more persons *with the specific intent to agree to commit a public offense of murder with a further specific intent to commit such offense* followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime. In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be proof of the commission of at least one of the acts alleged in the information. It is not necessary to the guilt of any particular defendant that defendant personally committed the overt act if he was one of the conspirators when such an act was committed." (Italics added.)

In addition, during his closing argument, the prosecutor told the jury that "when an individual is charged with conspiracy to commit murder, the malice has to be express malice. Implied malice won't get it. It's got to be express malice or the specific intent to kill. Implied malice won't work, does not apply to conspiracy to commit murder. There has got to be the specific intent to kill . . . ." At the conclusion of argument, prior to reading the jury instructions, the trial court told the jury,

---

75 Cal.App.5th 276, 292 ["the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions"].) However, the superior court did not engage in factfinding in denying Warren's petition, instead relying, at least in part, on Warren's conviction for conspiracy to commit murder.

"During the argument there was reference to conspiracy to commit murder and the forms of malice, specifically they were referred to as express malice and implied malice.  In the law of . . . conspiracy to commit murder those crimes may only be based on express malice.  You cannot consider implied malice."

Moreover, during the jury's deliberations, the jury submitted a question to the trial court regarding the overt act requirement of the conspiracy charge.  The court responded by telling the jury that conspiracy "is an agreement between two or more persons with the specific intent to agree and with the further specific intent to commit the crime of murder.  If I sit down with another person and we agree and we have a specific intent to agree and we have the specific intent to kill, and we are at the dinner table, we are sitting there and we have come up to that point, we agree and we have the intent to agree and the intent to kill, that is not a criminal conspiracy because there is an element missing.  There is required, to put it one way, to do something about it, and what you have to do is you have to commit an overt act."

Based on these instructions and statements to the jury, to find Warren guilty of conspiracy to commit murder, the jury necessarily found Warren had the specific intent to kill.  Accordingly, Warren is not eligible for relief under section 1172.6.  (See *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 866 [defendant was not eligible for resentencing under § 1172.6 where she was "convicted of conspiracy to commit *murder,* which necessarily required an intent to kill"]; *People v. Allen* (2023) 97 Cal.App.5th 389, 396 [same]; see also *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 641 ["'all conspiracy to commit murder is necessarily

conspiracy to commit premeditated and deliberated first degree murder'"].)

Warren contends these jury instructions do not render him ineligible for relief under section 1172.6 because a conviction of conspiracy is not sufficient to show the defendant had the necessary mens rea and actus reus, apparently suggesting he could have been convicted of attempted murder under the natural and probable consequences doctrine. It is true that the jury here was instructed that Warren could be guilty of attempted murder if he aided and abetted an assault (the target offense) on Officer Iwig and the attempted murder of Officer Iwig was the natural and probable consequence of the assault. The trial court instructed the jury on direct perpetrator liability for attempted murder (CALJIC No. 8.66), direct aiding and abetting (CALJIC Nos. 3.00 and 3.01), and the natural and probable consequences doctrine (CALJIC No. 3.02). "'Under the natural and probable consequences theory of aiding and abetting a murder [or attempted murder], a defendant can be found guilty of murder [or attempted murder] if he or she aids and abets a crime (i.e., the target crime) and murder (i.e., the nontarget crime) is a natural and probable consequence of that target crime.'" (*People v. Medrano* (2021) 68 Cal.App.5th 177, 182.)

Despite these instructions, the jury verdicts establish that the jury did not convict Warren pursuant to the natural and probable consequences theory of attempted murder. As discussed, the jury's finding Warren was guilty of conspiracy to commit murder necessitated a finding he harbored an intent to kill Officer Iwig. Had the jury believed Warren's intent was to aid and abet his codefendants only in the crime of assault, then they could not have found him guilty of conspiracy to commit

10

murder.  (See *People v. Medrano, supra,* 68 Cal.App.5th at pp. 183-184 ["in convicting appellant of first degree murder, the jury did not rely on the natural and probable consequences doctrine because it found him guilty of conspiracy to commit first degree murder"]; accord, *People v. Beck & Cruz, supra*, 8 Cal.5th at p. 645 ["Beck and Cruz were charged with conspiracy *to murder*, not conspiracy to commit a lesser crime that resulted in murder.  There is thus no possibility they were found guilty of murder on a natural and probable consequences theory."].)

Warren relies on *People v. Whitson* (2022) 79 Cal.App.5th 22, 33 for the proposition that a "defendant convicted of conspiracy to commit murder is not ineligible for relief as a matter of law."  This characterization of the holding in *Whitson* is misleading.  In *Whitson*, the Attorney General argued, as he does here, that the defendant's conviction for conspiracy to commit murder made him ineligible for resentencing as to his murder conviction.  (*Id.* at p. 31.)  However, when the trial court instructed the jury on conspiracy to commit murder, it instructed with CALJIC No. 6.10 that the jury must find Whitson had the intent to commit murder, but it omitted the language requiring the jury to find the defendant acted "'with the further specific intent to commit that crime.'"  (*Whitson*, at p. 32, fn. 7.)  Thus, the court held, the jury could have convicted the defendant of conspiracy to commit murder without finding he had the specific intent to commit murder.  (*Id.* at pp. 32-33.)  The court observed, however, that "[h]ad the jury been fully instructed with respect to conspiracy to murder, including the portion of the form instruction deleted, its guilty verdict would have encompassed the finding that Whitson intended to kill."  (*Id.* at p. 32.)

11

Warren's reliance on the Supreme Court's recent decision in *People v. Curiel* (2023) 15 Cal.5th 433, 440-441 is similarly misplaced. In *Curiel*, the court held the jury's true finding on the gang-murder special circumstance, which required the jury to find petitioner Freddy Curiel intended to kill, did not render Curiel ineligible for relief under section 1172.6 at the prima facie review stage. (*Ibid.*) The court explained that "[b]ecause the jury was instructed on the natural and probable consequences doctrine, the jury was required to find only that Curiel knew that [the shooter] intended to commit one of the underlying target offenses and that Curiel intended to aid him in *that* offense, not murder." (*Id.* at p. 468.) Although the jury here was instructed on the natural and probable consequences doctrine, it was instructed on the elements of conspiracy (in contrast to *Curiel*) and, as discussed, it was told that to convict Warren for conspiracy, he must have the specific intent to commit murder.

## DISPOSITION

The order denying Warren's section 1172.6 petition is affirmed.

FEUER, J.

We concur:

SEGAL, Acting P. J.

STONE, J.

12